United States District Court
Eastern District of Michigan
Southern Division

| | |
|---|---|
| The United States of America, | Criminal No. 20-20520 |
| Plaintiff, | Hon. Judith E. Levy |
| v. | |
| Gregory Young Jr., | |
| Defendant. | |

## Government's Response in Opposition to Defendant's Motion for Revocation of Detention Order

Defendant Gregory Young Jr. ("Young") is a career drug trafficker with a lengthy criminal history that includes violent and gun convictions, failing to appear for court, and multiple probation violations. Young actively absconded from probation for two years before officers stopped him in July 2020, at which time he attempted to evade arrest by providing multiple false names and dates of birth. After that arrest and while on supervision, he committed the instant charged conduct, including providing cocaine for sale and engaging in sales of pure methamphetamine. For that conduct, he is indicted on five drug-trafficking-conspiracy and drug-distribution charges. Each of these charges carry a presumption of detention and mandatory minimum sentences. The pretrial services officer recommended detention on both dangerousness and risk-of-flight grounds, and after a hearing, Magistrate Judge Patricia Morris ordered Young detained pending trial because he is a danger to the

community and a flight risk.  (ECF No. 32, PageID.45).  Young now appeals this order (ECF No. 76), but fails to rebut the presumption of detention and remains a danger to the community and flight risk.  The Court should therefore deny Young's motion.

**I.      Factual Background**

      **A.      The Government's Evidence in Support of Detention**

The United States relies on its factual proffer during the October 5, 2020 detention hearing, which included (1) the pretrial services report; (2) the criminal complaint; (3) facts regarding Young's post-arrest interview; (4) facts regarding the execution of a search warrant at his hotel room, and (5) information from drug lab reports.  The government further relies on the attached reports clarifying information presented at the detention hearing about Young's probation violations.

The audio file for the detention hearing is embedded below, (ECF No. 30), and the transcript of the hearing is attached hereto, (Transcript, Ex. A).



1.    **The Pretrial Services Report**

The government proffered the following information from the pretrial services report.  Regarding Young's employment, residence, and drug use, the government proffered that (1) Young stated that he worked for his father's landscaping business for ten years, but his father stated that Young has not done so for a couple of years and worked for him only periodically; (2)  Young has no other employment history or source of income despite his age of 43 years; (3) Young was untruthful about his residence in that he stated that he had been living at a residence in Fraser for the past two years, when in fact he had been evicted from that residence and was staying in a hotel room that he had been paying for daily in cash; (4) Young's girlfriend provided inaccurate information verifying Young's residence; and (5) Young admitted to daily marijuana use and occasional cocaine use.

The government further proffered Young's lengthy criminal history, which dates back to when he was 13 years old.  At 18 years old, Young was convicted of Felony Controlled Substance, 2nd Offense, Double Penalty.  That same year, he sustained additional convictions for Felony Distribution of Imitation Controlled Substances and Felony Carrying a Concealed Weapon.  Thereafter, Young sustained two misdemeanor convictions involving drugs.  Then, in 2005, Young was convicted of Felony Controlled Substance Second or Subsequent Offense and Misdemeanor Domestic Violence, and the court sentenced him to five years of probation.  In March

2006, the court issued a bench warrant for Young's violation of probation, and in September 2006, the court sentenced Young to 23 months to eight years' imprisonment on that violation. Then, in 2016, Young was convicted of Felony Assaulting/Resisting an Officer. Notably, Young failed to appear for the arraignment on that charge, and the court issued a bench warrant. The court ultimately sentenced Young to 30 days' imprisonment and two years' probation. Young absconded from that probation in 2018, forcing the court to issue another bench warrant.

In addition, the government proffers the following information that it has learned since Young's initial detention hearing. According to Young's probation officer, Agent David Morales, Young had not contacted him since 2018. In fact, probation did not learn of Young's whereabouts until he was arrested on July 23, 2020. Officers arrested Young that day for driving without a license and providing false information to police officers. (Police Rpt., Ex. B). Specifically, officers stopped Young for a traffic violation. (*Id.*). Young did not have his driver's license, and he provided officers the name "Kyle Wilson" and a fake birthdate. (*Id.*). He even gave the officer a receipt bearing the name "Kyle Wilson." (*Id.*). As one of the officers walked back to his police car to verify this information, Young called out that his name is actually "Jason Marcel Young," and provided a different birth date. (*Id.*). When officers determined Young's true identity and confronted him, Young said that he provided fake names because he knew that once identified, he would go to jail. (*Id.*) Indeed, at the time of his arrest, Young had three outstanding warrants for his

absconding from probation, failure to pay child support, and a separate incident of driving without a license. (*Id.*).

The court held an arraignment for Young's probation violations on July 27, 2020. Young then sustained *another* probation violation based on an August 11, 2020 search warrant of his residence. (*See* Probation Reports, Exs. D, E, & F). That search revealed .4 grams of cocaine, cash, a text message indicative of drug trafficking on his cell phone, a digital scale, a silver press with cocaine residue, a narcotics reagent test with instructions, and plates with cocaine residue. Notably, there were children living in the home at the time of the search. Young pled guilty to the probation violations on November 17, 2020, and the court sentenced him to 60 days' imprisonment, with 60 days credited, and terminated his probation unsuccessfully. *See* (Docket, Ex. C).

Additionally, during the initial detention hearing, the government proffered pretrial services' findings that Young poses 1) a risk of non-appearance based on his substance abuse history, lack of verifiable and legitimate employment, criminal history while under supervision, and his history of failure to appear, and (2) a risk of danger based on his prior arrests and convictions, the nature of the instant offense, his substance abuse history, his criminal associations, his criminal activity while under supervision, and his history of a pattern of similar criminal activity.

### 2. The Criminal Complaint and Facts Regarding Young's Arrest and the Execution of a Search Warrant

The government further proffered the following facts from the criminal complaint, (ECF No. 1), and Young's post-arrest interview. In this drug-trafficking conspiracy, Young was involved in four undercover drug buys involving crack cocaine and methamphetamine—all of which were audio and video recorded. Young worked with codefendant Laron Davis to supply codefendant Brandon Coleman with drugs for the buys, and Young was himself involved in a hand-to-hand drug sale.

Specifically, on August 3, 2020, Young and codefendant Laron Davis supplied codefendant Brandon Coleman 28.85 grams of cocaine, which Coleman sold to an undercover agent. The agent then requested an additional half ounce of cocaine, and Young provided 14 grams of what he purported to be cocaine but was actually lidocaine. Two days later, Young, Davis, and Brandon Coleman sold 8.43 grams of pure methamphetamine to an undercover buyer. Less than one week after that, Young, Laron Davis, and Brandon Coleman sold 20.9 grams of pure methamphetamine to an undercover buyer. Young took the funds of that sale. Following this final drug buy, the Macomb County Sheriff's Office ("MCSO") executed a search warrant at Young's residence that he shared with his girlfriend. During the search, officers discovered drug paraphernalia with cocaine residue, .3 grams of cocaine, and $2,215 in cash.

On the day of Young's arrest in the instant case, on September 30, 2020, he was residing in a hotel room, where he had been staying for eight days after his eviction from his residence due to the MCSO's search warrant. Young was paying for the room in cash each morning. A search of the hotel room revealed 6.8 grams of cocaine in a plastic baggie, a straw with powder cocaine residue, and court mail addressed to Young.

During his post-arrest interview, Young admitted that codefendant Laron Davis paid him $100 to $200 each time Young delivered drugs for Davis.

### 3. Lab Reports

The government also proffered the following drug amounts attributable to Young: 28.85 grams cocaine base, 8.43 grams pure methamphetamine (35.14 grams total), and 20.9 grams pure methamphetamine (123.4 total grams).

### B. The Magistrate Judge's Order of Detention

After defense counsel's proffer and argument, the Magistrate Judge considered the necessary factors under 18 U.S.C. § 3142(g) and found that Young failed to rebut the presumption of detention. First, as to the nature and circumstances of the offense, the Magistrate Judge explained that because Young distributed large amounts of drugs, he fits into the category of persons that Congress contemplated in determining that drug trafficking in and of itself is a danger to the community. Second, the Judge noted that the weight of the evidence relates to evidence of danger and nonappearance.

As to Young's history and characteristics, the Magistrate Judge found that Young has significant ties to the community, is in good physical health, and has no substance abuse or mental health issues, all weighing in his favor.[1] But the Magistrate Judge explained that contrary to Young's report, his father stated that Young was not really employed. From this, the Magistrate Judge found it more likely that Young was surviving off the fruits of his drug trafficking. The Magistrate Judge then outlined Young's lengthy criminal history, first in the context of the danger that he presents to the community. She explained that while his history began at 13 years old with possessory offenses, he graduated to more serious conduct beginning with a distribution conviction at 18 years old. The Magistrate Judge was further concerned with the dismissal of a Felony Assault with Dangerous Weapon charge as part of a plea to a Felony Controlled Substance Subsequent Offense conviction, explaining that the combination of guns and drugs poses an additional danger to the community.

The Magistrate Judge then discussed Young's criminal history in the context of his risk of non-appearance, emphasizing his 2006 probation violation and bench warrant and the serious sentence that resulted; his failure to appear for his arraignment on his 2016 Felony Assault/Resisting charge and the issuance of a bench

---

[1] Although the Magistrate Judge noted that Young does not have any substance abuse issues, Young reported daily marijuana use and occasional cocaine use to pretrial services. (*See* Pretrial Report).

warrant; and the issuance of another bench warrant for his absconding from probation in 2018.

Based on the above, the Magistrate Judge found, by clear and convincing evidence, that no condition or combination of conditions of release would assure the safety of the community and ordered Young detained. (Detention Order, ECF No. 32, PageID.44). The Magistrate Judge further found, by a preponderance of the evidence, that no condition or combination of conditions would reasonable assure Young's appearance as required. (*Id.*). The Magistrate Judge expressly indicated in her order that in addition to the findings made on the record at the hearing, detention is supported by: (1) the lengthy period of incarceration that Young faces if convicted, (2) Young's criminal history, (3) Young's participation in criminal activity while on probation, (4) Young's lack of stable employment, and (5) Young's prior violations of probation, parole, or supervised release. (*Id.*). Young now moves to revoke the detention order. (ECF No. 76). For the following reasons, the Court should deny Young's motion.

## II. Argument

### A. Standard of Review

Under 18 U.S.C. § 3145, this Court reviews a magistrate judge's pretrial order *de novo. See United States v. Yamini*, 91 F. Supp. 2d 1125, 1128-29 (S.D. Ohio Feb. 24, 2000) (collecting cases).

The United States moved for detention under 18 U.S.C. § 3142(f)(1)(C) because the charges involve a drug offense punishable by 10 years or more. The government sought detention on non-appearance and dangerousness grounds.

For each of Young's drug-trafficking charges, there is a statutory presumption of detention, 18 U.S.C. § 3142(e)(3)(A), which Young may rebut if he "comes forward with evidence that he does not pose a danger to the community or a risk of flight." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Once a defendant satisfies his burden of production, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Id.* (internal citation omitted). "The presumption remains a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *Id.* "To rebut the presumption, therefore, a defendant should present all the special features of his case that take it outside the congressional paradigm." *Id.* at 946 (internal citations and quotations omitted).

In addition to the presumption of detention, the Court must consider the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence as it relates to dangerousness and risk of flight; (3) the defendant's history and characteristics, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

### B.   Young, who supplied cocaine for sale and was involved in the distribution of methamphetamine, is a danger to the community.

The Section 3142(g)(1) factors weigh heavily in favor of Young's detention. First, the nature and circumstances of the offense demonstrate that Young presents a danger to the community. He was involved in four separate undercover drug buys, all while he was on probation. In one drug buy, Young provided 28.5 grams of cocaine to his codefendant Brandon Coleman to sell. He then provided an additional 14 grams of what he purported to be cocaine but was in actuality lidocaine. He was involved in two additional drug buys where Brandon Coleman sold 8.43 grams of pure methamphetamine (part of a 35.14-gram mixture) and 20.9 grams of pure methamphetamine (part of a 123.4-gram mixture). Further, he admitted to possessing 6 grams of crack cocaine in his hotel room. All of this reflects Young's role as a drug dealer and danger to the community. Indeed, "drug trafficking is a serious offense that, in itself, poses a danger to the community." *Stone*, 608 F.3d at 947, n. 6; *see also United States v. Leon*, 766 F. 2d 77, 81 (2d Cir. 1985) ("the harm to society caused by narcotics trafficking is encompassed within Congress's definition of 'danger'"). To that end, the Sixth Circuit "routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant has engaged in violence." *Stone*, 608 F.3d at 947 n.6; *see also United States v. Gray*, 20 F. App'x 473 (6th Cir. 2001) (in conspiracy to possess with intent to distribute cocaine, testimony from family members was insufficient to overcome the

presumption of detention). Here, Young is a higher-level middle-man, working for a larger supplier and providing drugs to Brandon Coleman, who sells them to an undercover agent. As the Magistrate Judge correctly found, this places Young within the category of persons that Congress contemplated in considering danger to the community.

In addition, if convicted, Young is facing a mandatory sentence of 5 years' imprisonment, and based on his criminal history, he could face a mandatory minimum sentence of 10 years' imprisonment, which further reflects the serious nature of his drug-trafficking crimes. *See* 21 U.S.C. § 841(b)(1)(B) (mandatory minimum five-year sentence), 21 U.S.C. § 841(b)(1)(A)(iii) (increasing mandatory minimum sentence to 10 years if the defendant has one prior serious drug felony); *see, e.g., Baldwin v. N.Y.*, 399 U.S. 66, 68 (1970) ("In deciding whether an offense is 'petty,' we have sought objective criteria reflecting the seriousness with which society regards the offense . . . and we have found the most relevant such criteria in the severity of the maximum authorized penalty."). Thus, this factor weighs heavily in favor of detention.

The weight of the evidence likewise supports detention. The weight of the evidence "goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948. "[S]trong evidence against a person . . . could increase the likelihood of danger to the community because they could believe that they are more likely to be incarcerated in the future, causing them to be more likely to engage in dangerous behavior." *United States v. Rice*, No. 3:04CR-

83-R, 2006 WL 1687749, at *2 (W.D. Ky. June 19, 2006). The weight of the evidence against Young—his criminal history, his failures to appear for court and absconding from probation, his criminal conduct while on probation, the recorded undercover drugs buys, the lab reports, and the cocaine discovered in his hotel room—is very strong, which makes it more likely that he will engage in dangerous behavior, particularly when considered in connection with the high mandatory-minimum sentence that he faces.

Young's history and characteristics further support detention. Young has a lengthy criminal history involving almost exclusively drug, firearm, and violent offenses. Notably, he has multiple convictions for Felony Controlled Substance, a conviction for carrying a concealed weapon, a domestic violence conviction, and a 2016 conviction for Assaulting/Resisting an Officer. Further, he has a pending Felony Dangerous Drug charge based on a search of his residence revealing a text message on his phone indicative of drug trafficking, a digital scale, a silver press with cocaine residue, a narcotics reagent test with instructions, and plates with cocaine residue. That there were children living in the home at the time of the search only increases the danger posed.

As the Magistrate Judge recognized, Young's history with combining drugs and firearms presents an even greater risk of danger to the community. And he is 43 years old with no lawful employment. Moreover, after absconding from probation for two years, *and less than two weeks after his arrest in July and while on supervision*, he provided

13

cocaine, participated in the distribution of methamphetamine, and possessed cocaine and drug paraphernalia at his residence and hotel room. Given this history, there are no conditions that will reasonably assure the Court that Young will not continue his drug dealing if released pending trial.

Moreover, as explained in greater detail below, his history demonstrates that there are no conditions that will reasonably assure the Court that Young will appear for future hearings as required. For all of these reasons, Young has not rebutted the presumption of detention. Young is the type of offender that, in Congress's "substantive judgment . . . should ordinarily be detained prior to trial . . ., and he does not present "special features" that take his case "outside the congressional paradigm." *Stone*, 608 F.3d at 945-46.

Young's motion for release fails to identify any factors to rebut the presumption that he poses a danger to the community. Young asserts that he could live with his girlfriend and their six-year old daughter or either of his parents. But Young was residing with his girlfriend and daughter, and on supervision, when he engaged in the drug trafficking conduct alleged in the indictment and when officers found cocaine and drug paraphernalia in his residence on August 11, 2020. Young has failed to provide any evidence that he will not continue the same drug trafficking conduct if he is released to reside with them again. The same holds true if Young resided with either of his parents. In fact, Young was supposedly living with his mother when he absconded from probation in 2018. *See* (Probation Violation Report,

14

Ex. D.) Young has shown that he is willing to continue to sell drugs while on supervision, and he can do that from any residence, even with electronic monitoring. Indeed, Young engaged in the drug-trafficking conduct alleged in the indictment and possessed drugs and drug paraphernalia at his residence, all within weeks after his arrest arraignment on his probation violations in July. This demonstrates that contact with law enforcement and court intervention will not deter Young from engaging in criminal conduct while on supervision.

Moreover, Young's generalized and unsupported assertion that county jails are not equipped to fight COVID-19 is insufficient to outweigh the factors warranting detention. There have been no reported cases of COVID-19 at Livingston County Jail where Young is currently housed. Moreover, Young does not allege that he has contracted COVID-19, that he has been exposed to any individuals with COVID-19, or that he has any serious health conditions that place him at a higher risk of complications if he contracts COVID-19. Young's request for relief is thus based solely on the *possibility* that he may become ill with COVID-19 at some future time while in detention. This speculative concern is not relevant to whether he presents a danger to the community or risk of flight, and therefore, does not rebut the presumption of detention.

Indeed, while COVID-19 presents certain risks for all persons, inmates included, Young is no different than many other detainees who are currently in custody. The speculative prospect of exposure to COVID-19 does not diminish the

15

public interest in keeping dangerous offenders off the streets. Further, releasing inmates to home detention and electronic monitoring, as Young requests, would place an undue burden on Pretrial Services and expose its officers to greater health risks while attempting to supervise these individuals in the community.

Young's speculative concerns about possible future exposure in the jail should not be permitted to overwhelm the careful balance of factors prescribed by Congress in determining whether he is properly subject to pretrial detention. *See United States v. Wood*, No. , 2020 WL 2197767 (E.D. Mich. May 6, 2020) (Roberts, J.) (generalized concerns surrounding the Covid-19 pandemic do not rebut presumption); *United States v. Johnson*, No. 19-CR-20437, ECF No. 53 (E.D.M.I. Mar. 26, 2020) (Leitman, J.) (denying defendant's motion to revoke detention order, after analyzing statutory presumption and § 3142(g) factors, and noting "based upon the balance of factors described above, the Court is not persuaded that the COVID-19 pandemic justifies releasing [defendant] prior to trial"); *United States v. Martin*, No. PWG-19-140-13, 2020 WL 1274857, at *2 (D. Md. Mar. 17, 2020) (rejecting similar argument and noting that "as concerning as the COVID-19 pandemic is," the court's consideration "must in the first instance be an individualized assessment of the factors identified by the Bail Reform Act."); *cf. United States v. Raia*, Case No. 20-1033, at 8 (3rd Cir. April 2, 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts

16

to curtail the virus's spread."). Accordingly, the Court should reject Young's arguments and detain him on the ground that he poses a danger to the community.

    **B.    Young, who has previously failed to appear for court, absconded from supervision, and actively attempted to evade arrest, presents a risk of flight.**

The Court should also detain Young because he poses a risk of non-appearance for further court proceedings. The evidence establishes, by a preponderance of the evidence, that no conditions will reasonably assure Young's appearance as required. He has already twice demonstrated that supervision terms are insufficient to assure his appearance for court proceedings. In 2016, the court issued a bench warrant for Young's failure to appear for his arraignment on a Felony Assaulting/Resisting an Officer charge. While on probation for that offense in 2018, he absconded, forcing the court to issue another bench warrant. Young actively absconded from probation *for two years*. He was not discovered until a traffic stop in July 2020, at which time he attempted to avoid arrest by providing officers *two different false names and dates of birth*, admitting that he was trying to avoid detection because he knew he was going to jail. Indeed, he had three outstanding warrants at the time of his arrest. Further, he lacks legitimate employment and has a history of substance abuse, which increases his non-appearance risk. Young has simply failed to provide the Court with any reason to believe that, unlike before, he will now abide the terms of his supervision and appear for court hearings as required.

As discussed above, the weight of the evidence against Young is strong—Young was involved in recorded undercover drug buys, and he admitted to possessing cocaine. Such strong evidence, coupled with the lengthy sentence Young faces, increases his risk of flight. *Rice*, 2006 WL 1687749, at *2 ("[W]hen considering the weight of the evidence against the person, the judicial officer is to consider how the weight of the evidence would affect the person's dangerousness or risk of flight—for example, strong evidence against a person could increase their risk of flight because they are likely to be convicted[.]"). Thus, the nature and circumstances of the offense, including the mandatory-minimum sentence, and Young's history of violating probation and failing to appear, demonstrate by a preponderance of the evidence that there are no conditions or combinations of conditions that will reasonably assure his appearance as required.

Young's argument that his ties to the community will assure his appearance is belied by his prior failures to appear for court hearings. The question is not whether Young will flee Detroit. The question is whether reasonable conditions will assure his appearance in court. As explained above, Young has already twice demonstrated that conditions of supervision are insufficient to assure his appearance in court despite his ties to the community. After he absconded for two years, he was found *in Detroit*. His ties to the community therefore provide no support for the notion that he will now appear in court as required. Further, that Young appeared virtually for his probation violation hearings after all of this does not outweigh his multiple probation violations,

18

prior failure to appear, absconding from probation, and active efforts to avoid arrest. Accordingly, the Court should detain Young because he also presents a significant non-appearance risk.

## III.   Conclusion

For the foregoing reasons, the Court should deny Young's motion and continue his detention pending trial.

>Respectfully Submitted,
>
>Matthew Schneider
>United States Attorney
>
>*/s Ranya Elzein*
>Danielle Asher
>Ranya Elzein
>Assistant United States Attorneys
>211 West Fort Street, Suite 2001
>Detroit, Michigan  48226-3211
>(313) 226-9518/0213
>danielle.asher@usdoj.gov
>ranya.elzein@usdoj.gov

Date: November 25, 2020

## Certificate of Service

I hereby certify that on November 25, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification to the attorney of record.

*/s Ranya Elzein*
Ranya Elzein
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-0213
ranya.elzein@usdoj.gov